IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NANETTE WALLS, THOMAS SCOTT AND PATRICIA CRONIN, WILLIAM C. AND HELLER BATTON, GREGORY P. DOPKOWSKI, SR., SAMUEL AND BEVERLY PATTERSON, JR., RAHEIM AND SYREETA PATTERSON, ARNOLD N. AND LOIS A. WELSH, JR.<br><br>Plaintiffs,<br><br>v.<br><br>SIERRA PACIFIC MORTGAGE COMPANY, INC.,<br><br>Defendant. | Civil Action No. GLR-19-595 |

\*\*\*
**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant Sierra Pacific Mortgage Company, Inc.'s ("Sierra Pacific") Motion to Dismiss (ECF No. 13). The Motion is ripe for disposition and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motion.[1]

---

[1] Also pending before the Court is Defendant Sierra Pacific's Motion to Dismiss (ECF No. 8) and Plaintiffs' Motion to Strike Defendant Sierra Pacific Mortgage Company Inc.'s Response to Plaintiffs' Notice of Supplemental Authority. (ECF No. 19). Because the Court will grant the Motion to Dismiss, these motions will be denied as moot.

## I. BACKGROUND[2]

Sierra Pacific is a California corporation registered in Maryland to provide mortgage services. (Am. Compl. ¶ 16, ECF No. 10). All Star Title, Inc. ("All Star") is a Maryland corporation that offers title and settlement services on residential mortgage loans, refinances, and reverse mortgages. (Id. ¶ 20). Plaintiffs Nanette Walls, Thomas Scott and Patricia Cronin ("Scott Plaintiffs"), William C. and Heller Batton ("Batton Plaintiffs"), Gregory P. Dopkowski, Sr., Samuel and Beverly Patterson, Jr. ("Patterson Parent Plaintiffs"), Raheim and Syreeta Patterson ("Patterson Plaintiffs"), and Arnold and Lois Welsh, Jr. ("Welsh Plaintiffs") are Maryland homeowners who obtained mortgage origination or brokerage services through Sierra Pacific.

Plaintiffs allege that Sierra Pacific's branch managers, loan officers, and agents accepted illegal kickbacks in exchange for assigning and referring residential mortgage services to All Star for title and settlement services. (Id. ¶¶ 3, 21–22). The kickbacks were allegedly laundered through third-party marketing companies, who created "sham invoices" or "sham payment records" to conceal the true nature of the transactions or through a "sham entity" that was expressly organized for the sole purpose of receiving, accepting, and concealing kickbacks. (Id. ¶¶ 3, 25–26, 30–35). In other instances, All Star allegedly paid kickbacks by purchasing marketing materials that Sierra Pacific used to solicit borrowers. (Id. ¶ 24). Plaintiffs assert that the kickbacks were also financed into

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). Additional facts will be discussed below and where relevant to the analysis.

2

borrowers' loan agreements, thereby ensuring their continued payment. (Id. ¶ 5). In furtherance of the scheme, Plaintiffs contend that All Star formed a cartel with various residential mortgage lenders whereby the participants entered into price fixing, minimum pricing, and refusal to deal agreements (the "Cartel Agreements") (Id. ¶ 4). According to Plaintiffs, Sierra Pacific and All Star continuously and regularly used U.S. mail and interstate wires to identify and defraud borrowers. (Id. ¶¶ 46–51). Plaintiffs allege that, as a result of this scheme, they were overcharged for their settlement services. (Id. ¶¶ 133–36, 142–44, 149–51, 157–60, 166–69, 175–78, 184–86).

On February 25, 2019, Plaintiffs sued Sierra Pacific. (ECF No. 1). On April 11, 2019, Sierra Pacific filed a Motion to Dismiss. (ECF No. 8). Plaintiffs filed an Amended Complaint on April 25, 2019, substituting David K. and Debra L. Bailey with Nanette Walls, Thomas Scott, and Patricia Cronin as named Plaintiffs.[3] The Amended Complaint alleges violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), et seq. (Count I); the Sherman Act, 15 U.S.C. § 1 (Count II)[4]; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, et seq. (Count III). (Am. Compl. ¶ 368–417). Plaintiffs seek certification of a class pursuant to Federal Rule of Civil Procedure 23, treble damages, and actual damages. (Id. at 91–92).

---

[3] Sierra Pacific argues that Nanette Walls and the Scott Plaintiffs are not proper Plaintiffs because they added themselves through amendment without seeking leave of court instead of complying with Federal Rule of Civil Procedure 24, which requires intervention. Because the Court concludes that Plaintiffs have failed to state a claim under either RESPA or RICO, the Court will not reach this argument.

[4] Plaintiffs withdrew their Sherman Act claim (Count II) on December 9, 2019. (See Pls.' Notice Suppl. Authority, ECF No. 17).

On May 28, 2019, Sierra Pacific filed a Motion to Dismiss the Amended Complaint for failure to state a claim. (ECF No. 13). Plaintiffs filed an Opposition on June 18, 2019. (ECF No. 14). On July 2, 2019, Sierra Pacific filed a Reply. (ECF No. 15).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

4

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Because this case includes allegations of fraud, the Plaintiffs must also satisfy Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The "circumstances constituting fraud" include the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what was obtained thereby." Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc., 197 F.Supp.2d 298, 313–14 (D.Md. 2000) (quoting Windsor Assocs. v. Greenfeld, 564 F.Supp. 273, 280 (D.Md. 1983)). A "complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D.Md. 2000) (citations omitted).

B.  **Analysis**

   1.  **Real Estate Settlement Procedures Act ("RESPA")**

      i.  **Tolling of the Statute of Limitations Based on Fraudulent Concealments**

Congress enacted RESPA to protect home buyers "from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). In furtherance of that goal, section 8(a) prohibits the paying or accepting of "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." Id. § 2601(b)(2).[5]

RESPA claims must be filed one year from the closing of the loan. 12 U.S.C. § 2614; see also Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 546 (4th Cir. 2019). However, the statute of limitations is subject to tolling on equitable grounds—including fraudulent concealment. Id. at 548. The fraudulent concealment doctrine prevents defendants from taking advantage of the limitations period when they have committed "secret illegal conduct." Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 125 (4th Cir. 1995). To toll a limitations period based on fraudulent concealment, a plaintiff must establish: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." Edmonson, 922 F.3d at 548 (internal quotations and citations omitted). To establish the first element of

---

[5] Section 8 of the Act is codified at 12 U.S.C. § 2607. For brevity and consistency, the Court refers to Section 8 rather than section 2607.

6

fraudulent concealment, a plaintiff must allege that the defendant engaged in affirmative acts of concealment, but those acts "need not be separate and apart from the acts of concealment," but instead "may include acts of concealment involved in the [alleged] violation itself." Id. at 553.

Here, it is undisputed that the original Complaint was filed on February 25, 2019 but that each Plaintiffs' RESPA claim accrued as early as December 19, 2012 or as late as October 26, 2015.[6] However, Plaintiffs allege that they failed to learn of the facts giving rise to their RESPA claim within the statutory period because Sierra Pacific and All Star fraudulently concealed the kickbacks, injury, and damages. Specifically, Plaintiffs argue that Sierra Pacific: (1) laundered kickbacks through third-party marketing companies who produced sham invoices and payment records; (2) made false representations to borrowers in marketing materials; (3) manipulated and misrepresented the Annual Percentage Rate ("APR") associated with loan services; and (4) falsified borrowers' loan documents to conceal the kickback payments. The Court agrees with Plaintiffs and finds Edmonson particularly instructive on the fraudulent concealment issue, as plaintiffs in that case alleged a scheme almost identical to the one alleged here. 922 F.3d 535 (4th Cir. 2019).

There, the defendant lenders referred plaintiffs to Genuine Title, LLC ("Genuine Title") for title, escrow, and settlement services in exchange for unearned fees and

---

[6] Walls' loan settled on December 19, 2012 with Nationstar Mortgage, LLC. (Am. Compl. ¶ 132). The remaining Plaintiffs settled their loans with Sierra Pacific on the following dates: Scott Plaintiffs on June 5, 2013, (id. ¶ 140); Batton Plaintiffs on September 25, 2015, (id. ¶ 148); Dopkowski, Sr. on October 26, 2015, (id. ¶ 156); Patterson Parent Plaintiffs on September 16, 2015, (id. ¶ 165); Patterson Plaintiffs on June 10, 2015, (id. ¶ 174); and Welsh Plaintiffs on February 23, 2015, (id. ¶ 183).

7

kickbacks. Id. at 541. Genuine Title transferred more than four million dollars to an advertising and marketing agency ("BGI"), which in turn made millions of cash payments to the lenders' brokers and loan officers who made referrals to Genuine Title. Id. The Edmonson plaintiffs also alleged the involvement of a second company ("Competitive Advantage"), which provided promotional materials to the lenders' brokers. Id.

In support of their fraudulent concealment claim, the Edmonson plaintiffs alleged that both marketing agencies were "sham entities" created to conceal the kickback payments, as evidenced, in part, by the fact that Competitive Advantage had the same registered agent and address as Genuine Title. Id. at 542. The complaint identified the sham entities by name, the broker or loan officer working at the sham entity, and specific dates that Genuine Title transferred kickbacks through those entities. Id. at 553. That complaint also alleged that "brokers or loan officers employed by the [l]enders 'created shell companies to receive the [cash] payments' from BGI, whereas other brokers and loan officers used previously existing entities for the sole purpose of receiving the payments." Id. at 542. Lastly, the plaintiffs in Edmonson alleged that the lenders concealed the kickbacks by failing to report them on HUD-1 Settlement Statements and on other loan documents that required a "good faith estimate" of all loan-related fees. Id. at 542–43. Based on these allegations, the United States Court of Appeals for the Fourth Circuit concluded that the plaintiffs alleged sufficient facts to establish concealment. Id. at 553–54.

8

Viewing the factual allegations of this case in light of those asserted in Edmonson, the Court concludes that Plaintiffs have alleged enough facts establishing that Sierra Pacific engaged in fraudulent concealment.

First, Plaintiffs allege that Sierra Pacific and All Star laundered kickbacks through third-party marketing companies and through the creation of sham invoices and sham payment records. In support thereof, Plaintiffs identify a series of transactions, beginning on March 21, 2012 through September 22, 2014, in which All Star allegedly paid kickbacks to Sierra Pacific's White Marsh Branch by and through Titan List and Mailing Services ("Titan"), a Florida based marketing services company. (See Am. Compl. ¶¶ 66–102). The transactions are documented in what Plaintiffs characterize as "sham split invoices." (Id.). Plaintiffs allege that sham split invoices also prove that Sierra Pacific's Bel Air Branch received kickbacks from All Star by and through Titan, beginning on August 12, 2013 through at least August 2015. (Id. ¶¶ 106–10, 114). Plaintiffs also allege that All Star paid kickbacks to Sierra Pacific's Westminster Branch by and through MailerLeads, LLC ("MailerLeads"), an Ohio-based direct mail and leads company. (Id. ¶¶ 115–18).

Second, Plaintiffs assert that Sierra Pacific regularly falsified borrowers' "Good Faith Estimate," which requires a lender to identify charges for "title services and lender's title insurance" pursuant to 12 C.F.R. § 1024.7(a)-(b). (Am. Compl. ¶ 212). Specifically, Sierra Pacific allegedly failed to identify the kickback amounts and other fees charged in furtherance of the scheme. Similarly, Sierra Pacific allegedly failed to report the kickback fees on borrowers' HUD-1 Settlement Statement, which requires the disclosure of title and settlement services provided on the loan, in addition to fees associated with those services.

9

The Fourth Circuit has recognized that "omitting required information from the HUD-1 Settlement Statement form can constitute an affirmative act of concealment for purposes of the fraudulent concealment tolling doctrine." Edmonson, 922 F.3d at 554. Similarly, this Court has held that a plaintiff sufficiently alleges fraudulent concealment when a defendant concealed kickbacks by failing to report the "payments it received from All Star on the HUD-1 Settlement Statements and other settlement documents, including the Good Faith Estimate." Somerville v. W. Town Bank & Tr., No. CV PJM 19-0490, 2019 WL 6131288, at *2 (D.Md. Nov. 19, 2019).

In sum, Plaintiffs have alleged sufficient facts to support a claim of fraudulent concealment. The Court now considers whether Plaintiffs exercised reasonable diligence in uncovering the facts supporting those claims but nonetheless failed to do so within the limitations period.

### ii. Due Diligence

To avail themselves of the benefit of equitable tolling based on fraudulent concealment, plaintiffs must make "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery [was], so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made." J. v. Genuine Title, LLC, No. CV RDB-14-0081, 2015 WL 8315704, at *7 (D.Md. Dec. 9, 2015).

Here, Plaintiffs allege that they had no reason to believe that the alleged kickback scheme existed and that they only learned of it upon receiving a letter from Plaintiffs' counsel on January 3, 2019 or April 12, 2019, describing counsel's investigation into Sierra

10

Pacific and All Star. Sierra Pacific argues that Plaintiffs failed to exercise due diligence, first, because they were not prevented from inquiring about or investigating Sierra Pacific's relationship with All Star. According to Sierra Pacific, the marketing materials that Plaintiffs reference to support their concealment claim contained both company's names and logos, yet Plaintiffs failed to investigate that obvious relationship. Second, Sierra Pacific asserts that Plaintiffs only read their loan documents and participated in their closing, which is insufficient to demonstrate due diligence. Third, Sierra Pacific argues that Dopkowski and the Patterson Plaintiffs admitted in the original Complaint that they do not have all of their closing documents and that these Plaintiffs failed to allege that they attempted to preserve the documents. Because of this failure, Sierra Pacific argues that Dopkowski and the Patterson Plaintiffs did not exercise due diligence to justify equitable tolling of their claims.

The Court concludes that Plaintiffs had no reason to investigate a potentially fraudulent relationship between Sierra Pacific and All Star. None of the Plaintiffs allege that they received the mail solicitations or telemarking calls that would have revealed the companies' relationship. Even if Plaintiffs had, it is not for the Court to determine at this stage, that "one would expect a reasonable residential mortgage borrower' to conduct a further investigation into its lender's documents and fee structures." Somerville, 2019 WL 6131288, at *3. Relatedly, if Plaintiffs had no reason to suspect that the kickback scheme existed, nothing in their loan documents would have revealed otherwise. As Plaintiffs have already alleged, the Good Faith Estimates and HUD-1 Settlement Statements did not separately and specifically identify the kickback payments. See Edmonson, 922 F.3d at

554 (concluding that a plaintiff may satisfy the due diligence requirement even if he or she did not make any inquiries that would have prompted discovery of the underlying fraud "[i]f the plaintiff establishes that it was not (and should not have been) aware of facts that should have excited further inquiry on its part").

The Court is satisfied that Plaintiffs have sufficiently pled that Sierra Pacific fraudulently concealed evidence of its alleged scheme; that Plaintiffs plausibly allege that they did not discover the supposed fraud during the limitations period; and that whatever investigations Plaintiffs did or did not conduct into Sierra Pacific's actions were not inconsistent with due diligence. The Court now evaluates the sufficiency of Plaintiffs' RESPA claim.

### iii. Sufficiency of RESPA Claim

Section 8(a) prohibits the giving and accepting of fees, kickbacks, or any "thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). To prove a Section 8(a) violation, a plaintiff must establish: (1) a payment or a thing of value; (2) made pursuant to an agreement to refer settlement business; and (3) an actual referral. Egerer v. Woodland Realty, Inc., 556 F.3d 415, 427 (6th Cir. 2009) (citing Culpepper v. Irwin Mort. Corp., 491 F.3d 1260, 1265 (11th Cir.2007)).

However, § 2607(c)(2) does not prohibit "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." A bona fide payment refers to "a payment of reasonable

12

market value." PHH Corp. v. CFPB, 839 F.3d 1, 41 (D.C.Cir. 2016), reinstated in relevant part and rev'd on other grounds, 881 F.3d 75 (D.C.Cir. 2018). "Reasonable market value" means a "payment that bears a reasonable relationship to the market value of the services performed or products provided." Id. at 41 n.22. A payment that "bears a reasonable relationship to the market value of the services performed" does not violate RESPA, even if that payment was also "tied" to a referral. Id. at 41 n.22, 42.

Sierra Pacific argues that dismissal is warranted because Sierra Pacific's payments to All Star fall squarely within section 8(a)'s safe harbor provision and that Plaintiffs bear the burden of proving otherwise. The Court agrees.

In PHH, the United States Court of Appeals for the D.C. Circuit concluded that "[p]roving that the mortgage insurer paid more than reasonable market value—and thus made a disguised payment for the referral—is an element of the Section 8 offense." 839 F.3d at 49 n.27. Like Plaintiffs in this case, the Consumer Financial Protection Bureau ("CFPB") characterized this issue as an affirmative defense.[7] Id. The court unequivocally answered: "That is wrong. If there were express payments in exchange for referrals in this case, and PHH was trying to argue that the payments nonetheless were justified under some exception, that might potentially fit within the affirmative defense box. But here, there were no such express payments in exchange for referrals." Id.; see also Alexander v. Washington

---

[7] Plaintiffs characterize the safe harbor provision as an affirmative defense that they are not obligated to anticipate. Even if the Court agreed with Plaintiffs—which it does not—the Court notes that Sierra Pacific raised the issue in its first Motion to Dismiss filed on April 11, 2019. (See Def. Mot. Dismiss at 13, ECF No. 8). Plaintiffs' Amended Complaint, filed on April 25, 2019, did not address section 8(a)'s safe harbor protection as it relates to Sierra Pacific's alleged misconduct.

13

Mut., Inc., No. CIV.A. 07-4426, 2008 WL 2600323, at *4 (E.D.Pa. June 30, 2008) (concluding that plaintiffs had sufficiently alleged that the challenged payments were not covered by RESPA's safe harbor provision).

Plaintiffs argue that this case fits within the hypothetical offered by the D.C. Circuit. However, this case, as Plaintiffs allege, concerns the laundered payment of alleged kickbacks through marketing companies that purport to provide marketing services to All Star and Sierra Pacific. Sierra Pacific does not attempt to justify the payment of referral fees; rather, it argues that no such fees were ever paid and that the transactions Plaintiffs complain of are nothing more than legitimate payments to All Star, Titan, and MailerLeads for co-marketing materials with All Star, which were actually produced.

Plaintiffs argue that their allegations pass muster because of the Court's ruling in Somerville, in which an identical kickback scheme was alleged. 2019 WL 6131288, at *1 However, the Somerville court did not address the argument before this Court, i.e., plaintiffs' failure to allege facts demonstrating that the payments fell outside of RESPA's "safe harbor" provision, thereby precluding a cause of action for fees charged for services that were actually rendered. The Somerville defendants only argued that plaintiffs' RESPA claims were time-barred and not entitled to equitable tolling, and that plaintiff's RICO claim failed because the underlying RESPA violation was not a predicate offense. Id. at *1, 4. While the facts giving rise to the alleged RESPA violations may be the same, the parties' legal arguments are not.

In failing to allege that Sierra Pacific's payments to All Star are not protected under section 8(a)'s safe harbor provision, Plaintiffs have failed to allege an element of their

14

RESPA claim. Accordingly, the Court will dismiss Plaintiffs' RESPA claim.[8] Relatedly, because Plaintiffs' RICO claim is based upon mail and wire transaction that purportedly occurred in furtherance of the alleged RESPA scheme, the Court will also dismiss Plaintiffs' RICO claim.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Sierra Pacific's Motion to Dismiss (ECF No. 13) and dismiss Plaintiffs' Amended Complaint. A separate Order follows. Entered this 31st day of March, 2020.

_____/s/_____
George L. Russell, III
United States District Judge

---

[8] Having concluded that Plaintiffs have failed to establish that Sierra Pacific's payments are not covered by section 8(a)'s safe harbor provision, the Court will not reach the balance of Sierra Pacific's arguments for dismissal.