IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NANETTE WALLS, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-19-595 |
| SIERRA PACIFIC MORTGAGE, COMPANY, INC., | * | |
| | * | |
| Defendant. | | |

******

# MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion for Reconsideration and Relief from March 31, 2020 Order of Dismissal and for Leave to File Plaintiffs' Second Amended Complaint ("Motion for Reconsideration") filed by Plaintiffs Nanette Walls, Thomas Scott, Patricia Cronin, William C. and Heller Batton, Gregory P. Dopkowski, Sr., Samuel and Beverly Patterson, Jr., Raheim and Syreeta Patterson, and Arnold N. and Louis Welsh, Jr. ("Plaintiffs") (ECF No. 24). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

## I.   BACKGROUND[1]

The Court's previous Memorandum Opinion dismissing Plaintiffs' Complaint sets forth the relevant facts underlying Plaintiffs' claims in detail. (March 31, 2020 Mem. Op.

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

["Mem. Op."] at 2–4, ECF No. 22). In brief, on February 25, 2019, Plaintiffs sued Defendant Sierra Pacific Mortgage Company, Inc. ("Sierra Pacific"). (ECF No. 1). On April 11, 2019, Sierra Pacific filed a Motion to Dismiss. (ECF No. 8). On April 25, 2019, Plaintiffs filed an Amended Complaint adding additional Plaintiffs to the suit. (ECF No. 10). In the Amended Complaint, Plaintiffs alleged that Sierra Pacific accepted illegal kickbacks from All Star Title, Inc. ("All Star"), a Maryland corporation. (Am. Compl. ¶¶ 3, 21–22, ECF No. 10). Plaintiffs alleged that Sierra Pacific and All Star colluded to conceal the true nature of these kickbacks and that these actions resulted in Plaintiffs being overcharged for their settlement services. (Id. ¶¶ 3, 25–26, 30–35, 133–36, 142–44, 149–51, 157–60, 166–69, 175–78, 184–86).

The Amended Complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) et seq. (Count I); the Sherman Act, 15 U.S.C. § 1 et seq. (Count II); and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 et seq. (Count III). (Am. Compl. ¶¶ 368–76, 384–92, 399–411). Plaintiffs withdrew their Sherman Act claim on December 9, 2019. (See Pls.' Notice Suppl. Authority at 1, ECF No. 17).

On May 28, 2019, Sierra Pacific filed a Motion to Dismiss the Amended Complaint. (ECF No. 13). On March 31, 2020, this Court granted the Motion to Dismiss. (ECF Nos. 22, 23). On April 14, 2020, Plaintiffs filed a Motion for Reconsideration. (ECF No. 24). On April 27, 2020, Sierra Pacific filed an Opposition to Plaintiffs' Motion. (ECF No. 25). On May 11, 2020, Plaintiffs filed a Reply in support of the Motion. (ECF No. 26).

## II.   DISCUSSION

**A.   <u>Standard of Review</u>**

The Federal Rules of Civil Procedure include three rules that permit a party to move for reconsideration. Rule 54(b) governs motions to reconsider interlocutory orders. <u>See</u> <u>Fayetteville Invs. v. Com. Builders, Inc.</u>, 936 F.2d 1462, 1469–70 (4th Cir. 1991). Rules 59(e) and 60(b) govern motions to reconsider final judgments. <u>Id.</u> at 1469. Rule 59(e) controls when a party files a motion to alter or amend within twenty-eight days of the final judgment. <u>Bolden v. McCabe, Weisberg & Conway, LLC</u>, No. DKC-13-1265, 2014 WL 994066, at *1 n.1 (D.Md. Mar. 13, 2014). If a party files the motion later, Rule 60(b) controls. <u>Id.</u> This Court granted Sierra Pacific's Motion to Dismiss on March 31, 2020. Plaintiffs filed the Motion for Reconsideration on April 14, 2020, fourteen days later. Thus, Rule 59(e) controls.

Rule 59(e) authorizes a district court to alter or amend a prior final judgment. <u>See</u> <u>Katyle v. Penn Nat'l Gaming, Inc.</u>, 637 F.3d 462, 470 n.4 (4th Cir. 2011). A district court may alter or amend a final judgment under Rule 59(e) in three circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." <u>U.S. ex rel. Carter v. Halliburton Co.</u>, 866 F.3d 199, 210 (4th Cir. 2017) (citing <u>Zinkand v. Brown</u>, 478 F.3d 634, 637 (4th Cir. 2007)).

A federal district judge's power to grant a Rule 59(e) motion is discretionary. <u>Robinson v. Wix Filtration Corp., LLC</u>, 599 F.3d 403, 411 (4th Cir. 2010). In general, granting a motion for reconsideration "is an extraordinary remedy which should be used

sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2810.1, at 124 (2d ed. 1995)). Furthermore, "[a] motion for reconsideration is 'not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request.'" Lynn v. Monarch Recovery Mgmt., Inc., 953 F.Supp.2d 612, 620 (D.Md. 2013) (quoting Sanders v. Prince George's Pub. Sch. Sys., No. RWT-08-501, 2011 WL 4443441, at *1 (D.Md. Sept. 21, 2011)).

Among other reasons, a court may alter or amend a final judgment "to correct a clear error of law or prevent manifest injustice." Carter, 866 F.3d at 210 (quoting Zinkand, 478 F.3d at 637). Support for a Rule 59(e) motion requires more than simply "mere disagreement" with a decision. See Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993). A "factually supported and legally justified" decision does not constitute clear error. Jarvis v. Berryhill, No. TMD-15-2226, 2017 WL 467736, at *1 (D.Md Feb. 3, 2017) (quoting Hutchinson, 994 F.2d at 1081–82). As to the "manifest injustice" standard, courts evaluate whether there was fairness in the administrative process and whether a denial of due process occurred. See id. (citing Kasey v. Sullivan, 3 F.3d 74, 79 (4th Cir. 1993)).

**B.     Analysis**

    **1.     Real Estate Settlement Procedures Act ("RESPA")**

Section 2607(a) of RESPA prohibits the giving and accepting of fees, kickbacks, or any "thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan

shall be referred to any person." 12 U.S.C. § 2607(a). However, the statute further provides that it does not prohibit "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2).

Plaintiffs argue that this Court made two clear errors concerning the content of their allegations as they relate to the RESPA safe harbor provision. (Mem. Law Supp. Pls.' Mot. Recons. & Relief from March 31, 2020 Order Dismissal & Leave File Pls.' Second Am. Compl. ["Pls.' Mot."] at 3–5, ECF No. 24-1). First, Plaintiffs contend that the Court misconstrued All Star as the party receiving the alleged illegal kickbacks. (Id. at 3–4). For example, the Court wrote, "Sierra Pacific argues that dismissal is warranted because Sierra Pacific's payments to All Star fall squarely within section 8(a)'s safe harbor provision . . . The Court agrees." (Mem. Op. at 13). In fact, "Plaintiffs allege the opposite." (Pls.' Mot. at 3; see also Am. Compl. ¶ 57) ("All Star pays, and Sierra Pacific receives and accepts, kickbacks that were laundered through third party marketing companies used by Sierra Pacific for marketing services."). Plaintiffs argue that this misapprehension impacted the Court's analysis, as the Court relied on this misreading during its analysis of the applicability of the RESPA safe harbor provision. (Pls.' Mot. at 4).

Second, Plaintiffs argue that the Court erred by failing to consider ¶ 130 of the Amended Complaint, in which Plaintiffs alleged that Sierra Pacific did not render any services to All Star to warrant the payments it received. (Pls.' Mot. at 4–5). Plaintiffs maintain that this second error was also material to the Court's reasoning for its dismissal. (Id. at 5–6). In support of this argument, Plaintiffs cite decisions from other courts in which

5

similar allegations were found sufficient to preclude dismissal. (Id.). Plaintiffs note that ¶ 130 is supported by other paragraphs in the Complaint and by numerous exhibits filed in support of the Complaint. (Id. at 6).

The Court finds Plaintiffs' arguments persuasive. The Court's misapprehension regarding the direction of the payments between Sierra Pacific and All Star, along with its failure to consider Plaintiffs' plausible allegation that there were no legal services rendered for the payments, led to a clear error: concluding that the alleged kickback payments were protected under RESPA's safe harbor provision. (See Mem. Op. at 13–15). In other words, Plaintiffs have adequately alleged that the payments All Star made to Sierra Pacific were not bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed. See 12 U.S.C. § 2607(c)(2).

The case of Alexander v. Washington Mutual, Inc., No. 07-4426, 2008 WL 2600323 (E.D.Pa. June 30, 2008), which the Court cited in its March 31 Memorandum Opinion, supports this conclusion. In that case, the court considered allegations "that the reinsurance premiums at issue constitute kickbacks because they were payments for services not actually performed." Alexander v. Wash. Mut., Inc., No. 07-4426, 2008 WL 2600323, at *4 (E.D.Pa. June 30, 2008). The court determined that these allegations precluded dismissal because "whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed remain open questions[.]" Id.

Here, ¶ 130 of the Amended Complaint mirrors the allegations set forth in Alexander, supporting the conclusion that the Court's failure to consider those allegations

6

constituted clear error. Therefore, the Court will grant Plaintiffs' Motion for Reconsideration with respect to the RESPA claim.

### 2.     Racketeer Influenced and Corrupt Organizations Act ("RICO")

Plaintiffs also allege in the Amended Complaint that Sierra Pacific violated RICO. (Am. Compl. ¶¶ 399–411). In its March 31 Memorandum Opinion, the Court dismissed Plaintiffs' RICO claim, writing that "because Plaintiffs' RICO claim is based upon mail and wire transaction that purportedly occurred in furtherance of the alleged RESPA scheme, the Court will also dismiss Plaintiffs' RICO claim." (Mem. Op. at 14–15). Because the Court has concluded that it erred in dismissing Plaintiffs' RESPA claim, it must now assess whether Plaintiffs' RICO claim would otherwise have survived Sierra Pacific's Rule 12(b)(6) Motion to Dismiss.

The statutory language of RICO provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). A civil RICO action "is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity." Ekstrom v. Cong. Bank, No. ELH-20-1501, 2020 WL 6565251, at *16 (D.Md. Nov. 9, 2020) (citing U.S. Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010)). The United States Court of Appeals for the Fourth Circuit has cautioned, however, that it "will not lightly permit

ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).

In evaluating the viability of a RICO claim, the Fourth Circuit instructs courts to differentiate between "garden-variety fraud claims," which do not amount to a RICO violation, and "cases involving a more serious scope of activity." See Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000). The Fourth Circuit also cautions courts "to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions[.]" Awappa, 615 F.3d at 317 (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989)). To properly plead a civil RICO claim, Plaintiffs must allege "1) conduct [causing injury to business or property] 2) of an enterprise 3) through a pattern 4) of racketeering activity." Ekstrom, 2020 WL 6565251, at *17 (alteration in original) (citing Morley v. Cohen, 888 F.2d 1006, 1009 (4th Cir. 1989)).

### i.     Vicarious Liability

As an initial matter, Sierra Pacific asserts that it may not be held vicariously liable for the conduct alleged by Plaintiffs in this case because Plaintiffs failed to allege that "the illegal conduct alleged was known to and participated in by sufficiently high-level employees within [the] corporation and/or was sufficiently pervasive within the corporation as to be fairly attributable to the corporation." In re Am. Honda Motor Co., 958 F.Supp. 1045, 1051 n.3 (D.Md. 1997). Plaintiffs contend that Sierra Pacific may be vicariously liable for the actions of its employees to the extent it benefited from those actions, citing Thomas v. Ross & Hardies, 9 F.Supp.2d 547, 558 (D.Md. 1998).

As Sierra Pacific notes, Thomas is distinguishable from the case at bar, as it involves the question of whether a firm may be liable for the actions of one of its partners. Id. at 555–56. This is a distinctly different relationship from the one that exists between Sierra Pacific and its loan officers. The law in the Fourth Circuit, however, is less clear than Sierra Pacific suggests. For one, the Court has been unable to locate any decision by the Fourth Circuit clearly addressing this question; indeed, the Fourth Circuit decision that comes closest to deciding this issue suggests that traditional principles of respondeat superior should apply. See United States v. Najjar, 300 F.3d 466, 484 (4th Cir. 2002) ("[P]rinciples of corporate liability apply in the RICO context.").[2]

Moreover, the weight of cases in Maryland and elsewhere in the Fourth Circuit support the proposition that respondeat superior liability should apply to civil RICO claims under certain circumstances where employees act within the scope of their employment. See, e.g., Morley v. Cohen, 610 F.Supp. 798, 811 (D.Md. 1985) ("[A] corporation or partnership can be held liable under RICO for the acts of its agents and/or representatives committed within the scope of their authority."); Mylan Labs., Inc. v. Akzo, N.V., 770 F.Supp. 1053, 1070 (D.Md. 1991) ("[T]he corporations are not alleged to have been the victim or unwitting conduit of racketeering activity. The concerns of those courts which have declined to apply respondeat superior thus do not apply, and this Court will adhere to its holding in Morley that respondeat superior is applicable."); Tryco Trucking Co. v. Belk

---

[2] Like the theory of vicarious liability, "[r]espondeat superior assigns responsibility to an employer for the legal consequences that result from employees' errors of judgment and lapses in attentiveness when the acts or omissions are within the scope of employment." Restatement (Third) Of Agency § 2.04 (2006).

Stores Servs., Inc., 634 F.Supp. 1327, 1334 (W.D.N.C. 1986) ("RICO envisions respondeat superior liability."); Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc., No. CV 6:13-1067-HMH, 2015 WL 12843918, at *3 (D.S.C. Jan. 20, 2015) ("[T]here are genuine issues of material fact as to whether [Defendants' agents] were acting with actual or apparent authority when they engaged in the buyback scheme and whether that conduct benefitted [Defendants]. Accordingly, [Defendants'] motion for partial summary judgment on the issue of vicarious liability is denied."); United States v. Knox, No. 7:02CR00009, 2003 WL 22019046, at *4 n.1 (W.D.Va. Aug. 22, 2003) (permitting respondeat superior liability).[3]

Here, Sierra Pacific does not contend that the loan officers Plaintiffs accuse of wrongdoing were not its employees, nor does it argue that their actions were taken outside

---

[3] These decisions are also in line with the majority of United States Courts of Appeals to have ruled on the issue, which have generally permitted corporations to be held vicariously liable for RICO violations committed by their employees on the basis of respondeat superior. See, e.g., Davis v. Mut. Life Ins. Co. of New York, 6 F.3d 367, 379 (6th Cir. 1993); Quick v. Peoples Bank of Cullman Cnty., 993 F.2d 793, 797 (11th Cir. 1993); Brady v. Dairy Fresh Prods. Co., 974 F.2d 1149, 1154 (9th Cir. 1992); Petro-Tech, Inc. v. W. Co. of N. Am., 824 F.2d 1349, 1361–62 (3d Cir. 1987); Liquid Air Corp. v. Rogers, 834 F.2d 1297, 1306 (7th Cir. 1987). Many cases rejecting respondeat superior liability in the context of RICO actions have done so where the corporation comprises the alleged RICO enterprise and consequently fails to fulfill RICO's "distinctness" requirement. See, e.g., Toucheque v. Price Bros. Co, 5 F.Supp.2d 341, 347 (D.Md. 1998) ("[A] corporation may not be liable as a defendant in a civil RICO action under § 1962(c) on a theory of respondeat superior when the corporation is the RICO enterprise."). That is not the case here. As Plaintiffs have alleged, Sierra Pacific is not itself the enterprise, but rather a participant in the enterprise. Precluding RICO liability in such a situation "would prevent corporate persons from ever being found liable under RICO, since corporate principals may act only through their agents. Such a rule would be manifestly contrary to the intent of Congress, and we decline to adopt it." Fremont Reorganizing Corp. v. Duke, 811 F.Supp.2d 1323, 1339 (E.D.Mich. 2011) (quoting Davis, 6 F.3d at 379).

the scope of their employment. Accordingly, the Court finds that Sierra Pacific may be vicariously liable for their actions under principles of respondeat superior.

### ii. Conduct Causing Injury

As to the first prong of a RICO claim, conduct causing injury, Plaintiffs successfully plead that they suffered damages flowing from Sierra Pacific's alleged racketeering activity. For example, Plaintiffs allege that "[a]s a direct and proximate result of Sierra Pacific's pattern of racketeering activity and the All Star Scheme Enterprise, Plaintiffs and Class Members were injured and suffered actual damages in the amount of between $75-950." (Am. Compl. ¶ 406). The Amended Complaint also includes particularized breakdowns of the economic harm caused to each of the individual class representatives. (Id. ¶¶ 132–90). In the Fourth Circuit, these allegations are sufficient to satisfy the requirement that Plaintiffs allege conduct causing injury. See Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc., 262 F.3d 260, 264 n.2 (4th Cir. 2001) (citing Busby v. Crown Supply, Inc., 896 F.2d 833, 837 (4th Cir. 1990)).

Sierra Pacific next argues that Plaintiffs' RICO claim must fail because Plaintiffs fail to allege a causal connection between the alleged fraud forming the predicate acts for the RICO claim and Plaintiffs' injuries. The Court disagrees. Plaintiffs allege the existence of a fraudulent enterprise designed to mislead borrowers about the nature of the costs of the title and settlement services they would receive and about the relationship between All Star and participating lenders like Sierra Pacific. (See, e.g., Am. Compl. ¶¶ 44–50, 192–219). Plaintiffs further allege that, as a direct result of this fraudulent enterprise, they suffered injuries. (Id. ¶¶ 131–90). At the pleading stage, these allegations suffice to

establish "some <u>direct</u> relation between the injury asserted and the injurious conduct alleged." Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co., 884 F.3d 489, 493 (4th Cir. 2018) (quoting Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992)). Accordingly, the Court finds that the Complaint successfully alleges conduct causing injury.

### iii. Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiffs identify the "All Star Scheme" as the enterprise for the purposes of this RICO action, which was designed and executed by All Star and participated in by Sierra Pacific. (Am. Compl. ¶ 21, 401–02). These allegations suffice at the pleading stage to allege the existence of an enterprise.

### iv. Racketeering Activity

"Racketeering activity" includes a "laundry list of indictable acts," including mail fraud or wire fraud, among many other crimes. Ekstrom, 2020 WL 6565251, at *18 (citing 18 U.S.C. § 1961(1)(B)). Here, Plaintiffs allege that Sierra Pacific and All Star used the U.S. Mail and interstate wires to induce and deceive Plaintiffs in the pursuit of unlawful kickbacks. (Am. Compl. ¶¶ 67–102, 192–209, 402–04). At this stage, these allegations satisfy the "racketeering activity" prong.

### v. Pattern

To prove a "pattern" of racketeering activity, a plaintiff must show a minimum of two acts of racketeering activity that are (1) related and (2) amount to or pose a threat of

12

continued criminal activity. Ekstrom, 2020 WL 6565251, at *18 (citations omitted). "Acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)). "The Fourth Circuit has adopted a flexible approach to the continuity requirement" of RICO's "pattern" prong, instructing courts to consider "all the facts and circumstances of the particular case" in reaching a determination on the continuity element. See id. (quoting Brandenburg v. Seidel, 859 F.2d 1179, 1185 (4th Cir. 1989)). Here, Plaintiffs successfully plead more than two related racketeering incidents that pose the threat of continued criminal activity. (See Am. Compl. ¶¶ 6, 67–102, 192–209, 402–06). Accordingly, the Court finds that Plaintiffs have adequately alleged the existence of a "pattern" of racketeering activity.

### vi.      Heightened Pleading Standard

Finally, because the RICO claim is predicated on allegations of fraud, Plaintiffs must also satisfy Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Thus, allegations of fraud must include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citing Wright & Miller, supra, § 1297 at 590). The particularity requirements in Rule 9(b), however, "are less strictly applied with respect to claims of fraud by concealment" because "an omission 'cannot be described in terms of the time, place,

and contents of the misrepresentation or the identity of the person making the misrepresentation.'" Shaw v. Brown & Williamson Tobacco Corp., 973 F.Supp. 539, 552 (D.Md. 1997) (quoting Flynn v. Everything Yogurt, No. HAR-92-3421, 1993 WL 454355, at *9 (D.Md. Sept. 14, 1993)).

Sierra Pacific argues that the references to fraud in the Complaint are vague and that Plaintiffs do not allege details of the purported scheme to defraud. Once again, the Court finds Sierra Pacific's argument unpersuasive. Plaintiffs describe in more than sufficient detail, and with supporting exhibits, the nature and mechanics of the fraudulent scheme and the use of the mail and wires in the fraudulent scheme. (See, e.g., Am. Compl. ¶¶ 44–50, 67–102, 192–209, 402–06; id. Ex. 7 ["Misc. Invoices"], ECF No. 1-8). Plaintiffs' allegations are comparable to those this Court permitted to survive a motion to dismiss in Kerby v. Mortg. Funding Corp., 992 F.Supp. 787, 801 (D.Md. 1998) (denying motion to dismiss where plaintiffs described a fraudulent scheme using the mail and wires to share fraudulent information and transfer monies between defendants).

The Court is persuaded that Plaintiffs' allegations satisfy the Rule 9(b) particularity requirement. Because the Court finds that Plaintiffs adequately plead all elements of a RICO claim and plead their allegations of fraud with particularity, it will vacate its decision to dismiss Plaintiffs' RICO claim.

### 3. Leave to Amend

Plaintiffs style their Motion for Reconsideration as a Motion for Reconsideration and Relief from March 31, 2020 Order of Dismissal and for Leave to File Plaintiffs' Second Amended Complaint. (ECF No. 24). Plaintiffs include with the Motion a proposed Second

Amended Class Action Complaint. (ECF No. 24-2). Under Rule 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). "This directive gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012) (quoting Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009)). This decision to grant leave to amend lies within the discretion of the district court. Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va., 985 F.2d 164, 167–68 (4th Cir. 1993) (citations omitted).

Leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)). Leave to amend is futile when an amended complaint could not survive a motion to dismiss for failure to state a claim. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008). In determining whether an amendment is prejudicial, the Court considers the nature of the amendment and its timing. Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). The further a case has progressed, the more likely it is that amendment will be prejudicial. Mayfield, 674 F.3d at 379.

Here, leave to amend is appropriate. First, leave to amend is clearly not futile, given that the Court has reconsidered its decision to dismiss the First Amended Complaint and Plaintiffs' Second Amended Complaint does not advance a new legal theory. Second, Sierra Pacific will not be prejudiced by an amendment occurring in an action that has not

yet advanced to discovery. Third, Sierra Pacific has provided no evidence of bad faith on the part of Plaintiffs. Accordingly, the Court will grant Plaintiffs leave to amend.

### III.   CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' Motion for Reconsideration (ECF No. 24) and vacate its March 31, 2020 Memorandum Opinion and Order (ECF Nos. 22, 23). The Court will also grant Plaintiffs leave to file their proposed Second Amended Complaint. A separate Order follows.

Entered this 26th day of January, 2021.

                                                          /s/
                                      George L. Russell, III
                                      United States District Judge